IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PFG PRECIOUS METALS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 10 C 6462 |
| | ) | |
| JOY PERKINS, EDWARD O'CONNELL, | ) | |
| TINA UMOH, and JAMES STREETER, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| PFG PRECIOUS METALS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 10 C 7709 |
| | ) | |
| SUNTRUST BANK and CAPITAL | ) | |
| ONE, N.A., | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

This case, though initially filed by plaintiff PFG Precious Metals ("PFG") in the Circuit Court of Cook County against defendants Capital One, N.A. ("Capital One") and SunTrust Bank ("SunTrust") (together "Bank Defendants"), was removed to this court on December 3, 2010. In this case, PFG is seeking recovery from each Bank Defendant for conversion, unjust enrichment, and "money had and received." (No. 10 C 7709, Dkt. No. 1-1 ("Bank Compl.").) PFG alleges that each Bank Defendant unlawfully, unjustly, and without authorization debited $95,000 from PFG's bank account. The Bank Defendants have each moved to dismiss PFG's complaint

1

pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons set forth below, "Capital One, N.A.'s Motion to Dismiss" (No. 10 C 7709, Dkt. No. 29) and "Defendant SunTrust Bank's Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim" (No. 10 C 6462, Dkt. No. 41) are denied.

BACKGROUND

PFG is an Illinois corporation that engages in the business of selling certain precious metals. (Bank Compl. ¶ 5.) On June 22, 2010, non-party Joy Perkins ("Perkins") placed an order with PFG for $95,000.00 worth of gold coins. (*Id.* ¶ 7.) Perkins paid for the gold coins through an automated clearing house ("ACH") transaction with SunTrust. (*Id.* ¶ 8.) On June 22, 2010, PFG's bank account received $95,000 from Perkins's SunTrust account. (*Id.*) On June 28, 2010, PFG shipped the gold coins to the address that Perkins had designated for delivery. (*Id.* ¶¶ 9-10.) The gold coins were delivered to Perkins on June 29, 2010. (*Id.* ¶¶ 10-11.) That same day, PFG was notified that SunTrust had reversed the Perkins ACH. (*Id.* ¶ 12.) PFG's bank account was debited $95,000 and that amount was re-credited to SunTrust. (*Id.*) PFG has not received the gold coins it shipped to Perkins or any other consideration in exchange for the reversal of the Perkins ACH. (*Id.* ¶ 13.)

PFG's allegations against Capital One are nearly identical to its allegations against SunTrust. On June 17, 2010, non-party Edward O'Connell ("O'Connell") placed an order with PFG for $95,000 worth of gold coins. (*Id.* ¶ 16.) O'Connell paid for the gold coins through an ACH with Capital One. (*Id.* ¶ 17.) On June 21, 2010, PFG's bank account received $95,000 from O'Connell's Capital One account. (*Id.*) On June 23, 2010, PFG shipped the going coins to the address that O'Connell had designated for delivery. (*Id.* ¶¶ 18-19.) The gold coins were

2

delivered to O'Connell on June 24, 2010. (*Id.* ¶¶ 19-20.) On July 12, 2010, PFG was notified that Capital One had reversed the O'Connell ACH. (*Id.* ¶ 21.) PFG's bank account was debited $95,000 and that amount was re-credited to Capital One. (*Id.*) PFG has not received the gold coins it shipped to O'Connell or any other consideration in exchange for the reversal of the O'Connell ACH. (*Id.* ¶ 22.)

PROCEDURAL HISTORY

PFG initially filed two related complaints in state court. The first complaint was assigned case number 2010 L 01096 in the Circuit Court of Cook County, and named individuals Perkins, O'Connell, Tina Umoh ("Umoh"), and James Streeter ("Streeter") as defendants. (*See* No. 10 C 6462 ("Individual Case").) The Individual Case was removed to federal court on October 28, 2010, where it was assigned to Chief Judge James F. Holderman's calendar as federal case number 10 C 6462. The second state court case was assigned case number 2010 L 012358 in the Circuit Court of Cook County, and named SunTrust and Capital One as the defendants. (*See* No. 10 C 7709 ("Bank Case").) The Bank Case was removed to federal court on December 3, 2010, and assigned federal case number 10 C 7709. The Bank Case against defendants SunTrust and Capital One was then reassigned to Chief Judge Holderman's docket on December 20, 2010, because the case against the Bank Defendants was related to the case against the individual defendants.[1] (*See* No. 10 C 7709, Dkt. No. 12.) On April 27, 2011, PFG

---

[1] Despite the fact that these two cases have been consolidated before Chief Judge Holderman, separate complaints remain pending in each case. Accordingly, the motions to dismiss filed by SunTrust and Capital One should have both been filed in case number 10 C 7709, the case number assigned to the Bank Case.

3

voluntarily dismissed its claims against individual defendants Perkins and O'Connell.[2] (*See* No. 10 C 6462, Dkt. No. 31.) The Bank Defendants, SunTrust and Capital One, filed the pending motions to dismiss.

## LEGAL STANDARD

To avoid dismissal under Federal Rule of Civil Procedure 12(b)(6), a plaintiff's claim must only "raise a right to relief above the speculative level" such that the claim is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). If the allegations of a complaint "fail[ ] to state a claim upon which relief can be granted," the complaint will be dismissed. Fed. R. Civ. P. 12(b)(6). When addressing a motion to dismiss, the court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Fednav Int'l Ltd. v. Continental Ins. Co.*, 624 F.3d 834, 837 (7th Cir. 2010).

## ANALYSIS

1.  PFG's Allegations in the Individual Case's Complaint

At the outset, the court must consider the affect of certain allegations included in PFG's complaint against the individual defendants, insofar as the Bank Defendants argue that allegations in PFG's Individual Case's complaint are admissions that the court must accept as true. Consequently, the court will evaluate those allegations.

---

[2] The complaint in the Individual Case alleges that the other individual defendants, Umoh and Streeter, have active utilities registered to the addresses provided by Perkins and O'Connell and are in possession of the gold coins. (No. 10 C 6462, Dkt. No. 14 ("Indiv. Compl.") ¶¶ 20-21, 33-34.) Defendants Umoh and Streeter have not filed appearances in this case, despite being served on October 7, 2010, and October 2, 2010, respectively. (No. 10 C 6462, Dkt. No. 16-1.) Accordingly, the court finds defendants Umoh and Streeter to be in default pursuant to Federal Rule of Civil Procedure 55(a).

4

PFG alleged in the Individual Case's complaint that, "on June 25, 2010 . . . Defendant PERKINS caused SunTrust Bank to reverse the ACH by signing and delivering to SunTrust Bank a 'Written Statement Under Penalty of Perjury' . . . assert[ing] under penalty of perjury that she did not authorize PFG to debit her account through the ACH." (Indiv. Compl. ¶¶ 16-17.) PFG also alleged that, "on July 12, 2010, Defendant O'CONNELL caused Capital One, N.A. to reverse the ACH by signing and delivering to Capital One, N.A. an 'Affidavit of Unauthorized/Improper ACH Debit/Credit Activity' . . . assert[ing] under penalty of perjury that he did not authorize PFG to debit his account through the ACH." (*Id.* ¶¶ 30-31.) PFG's Individual Case's complaint alleged that both statements were false, and that Perkins and O'Connell "in fact had authorized PFG to send an ACH debit" to their respective bank accounts. (*Id.* ¶¶ 18, 32.)

The court can take judicial notice of the fact that these allegations were made without affecting the pending motions to dismiss. *See 520 South Michigan Ave. Asso. v. Shannon*, 549 F.3d 1119, 1138 n.14 (7th Cir. 2008) ("this court may consider judicially noticed documents without converting a motion to dismiss into a motion for summary judgment") (internal quotations and citation omitted). On the other hand, the parties dispute whether the court can, or should, accept PFG's allegations in the Individual Case's complaint as binding judicial admissions for purposes of analyzing the Bank Defendants' pending motions to dismiss.

"It is a 'well-settled rule that a party is bound by what it states in its pleadings.'" *Help at Home Inc. v. Med. Capital, LLC*, 260 F.3d 748, 753 (7th Cir. 2001) (quoting *Soo Line R.R. Co. v. St. Louis Sw. Ry. Co.*, 125 F.3d 481, 483 (7th Cir. 1997)). However, "a judicial admission is binding only in the litigation in which it is made." *Id.* at 753 n.2 (citing *Higgins v. Mississippi*,

5

217 F.3d 951, 954 (7th Cir. 2000)). "In other litigation, it is merely an evidentiary admission," *id.*, of the type inappropriately considered at the motion to dismiss stage.

PFG does not dispute that it made these allegations in its Individual Case's complaint. Moreover, the relevant facts alleged by PFG and relied upon by the Bank Defendants do not appear to be disputed by any party. As PFG represented to the court in its "Motion to Approve Joint Stipulation," Perkins and O'Connell expressly admit "that each of them contacted their banks to cancel the ACH transfers from each of their accounts." (No. 10 C 6462, Dkt. No. 16 ¶ 7.)

The court is troubled, however, by the Bank Defendants' insistence that the Individual Case and the Bank Case should be treated as part of the same litigation for purposes of the court's evaluation of the Bank Defendants' respective pending motions to dismiss. Although both cases are pending before Chief Judge Holderman, PFG's claims against the individual defendants continue to be set forth in a separate complaint, under a separate case number, from its claims against the Bank Defendants. At no time has PFG filed a consolidated or amended complaint against all defendants. As the Seventh Circuit has noted, "a judicial admission is in the nature of a waiver . . . and a waiver made for purposes of one lawsuit needn't have been intended to carry over to another." *Higgins*, 217 F.3d at 955. PFG presumably had a reason for what appear to be inconsistent allegations in its two different complaints. *See* Fed. R. Civ. P. 8(d)(3) (allowing inconsistent pleadings). Under these circumstances, the court finds it would be inappropriate to consider admissions made by PFG in its complaint in the Individual Case for purposes of addressing PFG's complaint in the Bank Case.

2.      Bank Defendants' Arguments

The Bank Defendants support their separate motions to dismiss with the following arguments. (*See* No. 10 C 7709, Dkt. No. 29 ("Capital One's Mot.") and No. 10 C 6462, Dkt. No. 41 ("SunTrust's Mot.").) First, Capital One argues that PFG never had a right to the funds at issue because, according to O'Connell's written affidavit, PFG was never actually authorized to initiate the ACH transaction. (No. 10 C 7709, Dkt. No. 30 ("Capital One's Mem.") at 6.) Second, both Bank Defendants argue that they were required by the National Automated Clearing House Association's Operating Rules ("NACHA") § 3.11.1 to reverse the ACH transactions and re-credit Perkins and O'Connell's respective accounts once O'Connell and Perkins submitted their respective written statements of fraud. (Capital One's Mem. 6-7; No. 10 C 7709, Dkt. No. 35 ("SunTrust's Reply") at 3-5.) Capital One also argues that PFG's unjust enrichment claim and money had and received claim fail because "Capital One did not receive, procure, or retain *any benefit*" related to the transaction at issue and "Capital One does not have the money" taken from PFG's account. (Capital One's Mem. 7-8 (emphasis in original).) Likewise, SunTrust argues that PFG's claims each fail because SunTrust, as a depository institution, does not own or control the funds it holds in Perkins's account, nor does SunTrust retain any benefit from holding those funds. (SunTrust's Mot. 2.)

The Bank Defendants' first two arguments rely on facts that are not properly before the court at this time—specifically, Perkins's and O'Connell's written affidavits swearing under penalty of perjury that they did not authorize the ACH transactions at issue.[3] The court therefore

---

[3] The court recognizes that the question of whether PFG has made a binding judicial admission in its case against the individual defendants is a close call. Even if the court were to accept these allegations as part of PFG's complaint in the Bank Case, however, the court still would not be

considers only the Bank Defendants' remaining argument, that they cannot be liable on PFG's claims because they do not own or control the funds at issue and did not retain any benefit from reversing the ACH transactions.

It is undisputed that all of PFG's claims require that the Bank Defendants assumed control, dominion, or ownership over the property at issue, or that the Bank Defendants otherwise retained a benefit from their reversal of the ACH transactions. *See Van Dies Supply Co. v. Shelby County State Bank*, 425 F.3d 437, 439 (7th Cir. 2005) (citing *Cirrincione v. Johnson,* 703 N.E.2d 67, 70 (Ill. 1998)) (conversion); *Galvan v. Northwestern Mem. Hosp.,* 888 N.E.2d 529, 541 (Ill. App. Ct. 1st Dist 2008) (citing *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.,* 545 N.E.2d 672, 679 (Ill. 1989)) (unjust enrichment); *Kaiser v. Fleming,* 735 N.E.2d 144, 147 (Ill. App. Ct. 2d Dist. 2000) (quoting *Maloney v. Pihera,* 573 N.E.2d 1379, 1389 (Ill. App. Ct. 5th Dist. 1964)) (money had and received).

The Bank Defendants argue that they did not assume control, dominion, or ownership over the funds at issue, nor did they retain any benefit from holding the funds. Rather, in the Bank Defendants' view, it is Perkins and O'Connell who owned the funds, received the $95,000 at issue with respect to each transaction, and retained the benefits from reversing the ACH transactions. The Bank Defendants contend that they are merely holding the relevant funds for the benefit of Perkins and O'Connell.

PFG has responded to these arguments by asserting that banks generally hold title to

---

inclined to grant the Bank Defendants' motions to dismiss. The Bank Defendants are, of course, free to raise these issues again at the summary judgment stage, when the factual record before the court has been more fully-developed.

deposited funds as debtors to the account holders who deposit those funds. (No. 10 C 7709, Dkt. No. 33 ("PFG's Resp.") at 6 (citing *Continental Cas. Co., Inc. v. Am. Nat'l Bank & Trust Co. of Chi.*, 768 N.E.2d 352, 357-358 (Ill. App. Ct. 1st Dist. 2002), and *Kaskel v. Northern Trust Co.*, No. 99 C 2421, 2001 WL 1135102, at *4 (N.D. Ill. Sept. 24, 2001) (Norgle, J.).) PFG further argues that banks benefit from holding deposited funds by lending to other customers, depositing the funds in a Federal Reserve Bank to earn interest, and by investing the funds in government or other securities. (*Id.* at 7.)

Neither the Bank Defendants nor PFG has cited any case law directly addressing the question whether a cause of action can be maintained against a bank for conversion, unjust enrichment, or money had and received under these circumstances. Moreover, the court's independent research has not located any such authority.

The court notes that the Supreme Court has rejected the main premise asserted by the Bank Defendants—that a bank account consists of "money belonging to the depositor and held by the bank." *Citizens Bank of Maryland v. Strumpf,* 516 US 16, 21 (1995). Rather, a bank account "consists of nothing more or less than a promise to pay, from the bank to the depositor." *Id.*; *see also Bank of Marin v. England,* 385 US 99, 101 (1966) ("The relationship of bank and depositor is that of debtor and creditor, founded upon contract."). To the extent Illinois courts have addressed the question of ownership, PFG has cited at least some support for its theory that the Bank Defendants owned and controlled the funds at issue. *See Continental Cas. Co., Inc.*, 768 N.E.2d at 357-58 ("When money is deposited with a bank, title to it passes and the bank becomes a debtor to the extent of the deposit and, to that extent, the depositor becomes a creditor.").

9

The Seventh Circuit has acknowledged the complexity of ownership under these circumstances, as well as the importance of assessing the question of ownership in context. *Commissioner of Internal Revenue v. Hendrickson,* 873 F.2d 1018, 1023 (7th Cir. 1989) ("'Ownership' is a word of more than one meaning, and context determines which of its meanings is the relevant one in a particular case."). In the words of Circuit Judge Posner:

> A bank "owns" the deposits made in it, in the sense of having legal title to them; the depositors are merely creditors of the bank in the amount of the deposits, as we have said. But there is a sense—albeit equitable rather than legal—in which it is the depositors who really "own" the deposits, for if the bank refuses (without some contractual or other justification) to return the deposits on demand, the depositors can bring a suit to recover the amount of money that they deposited.

*Id.* at 1023-24. In *Hendrickson*, the Seventh Circuit concluded that the "aim" of the statute at issue in that case was to "put pressure on the true taxpayer" and that, as a matter of equity, the cause of action lay against "the person who has equitable ownership of the funds in question, [meaning] the depositors in a bank rather than the bank itself, which merely has legal title." *Id.* at 1024.

Like the statute at issue in *Hendrickson*, PFG's claims in this case are equitable in nature. Without specific details about the two ACH transfers at issue and their subsequent revocations, however, the court is not in a position to weigh the equities in any party's favor at this time.

PFG has alleged that the funds at issue were "re-credited" to the Bank Defendants (Bank Compl. ¶¶ 12, 21), thus constituting money "received" into the accounts at each respective Bank Defendant. *Cf. Drury v. McClean County*, 433 N.E.2d 666, 670 (Ill. 1981) (finding no cause of action for money had and received where the named defendant did not actually receive any funds). It is also clear that the Bank Defendants had at least a limited right to "use" or "control" the funds while they were in the Bank Defendants' possession, presumably to the Bank

10

Defendants' benefit. At this stage of the litigation, PFG has set forth a plausible right to relief against the Bank Defendants, such that dismissal of PFG's claims is not appropriate as a matter of law.

## CONCLUSION

For the reasons set forth above, "Capital One, N.A.'s Motion to Dismiss" (No. 10 C 7709, Dkt. No. 29) and "Defendant SunTrust Bank's Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim" (No. 10 C 6462, Dkt. No. 41) are denied. The Bank Defendants' answers are due on or before October 12, 2011. Counsel for all parties are requested to meet pursuant to Rule 26(f) and jointly file an amended Form 52 on or before October 26, 2011. Case number 10 C 7709 is set for a report on status and entry of a final scheduling order on November 3, 2011 at 9:00 a.m. All pending dates set by the court on April 28, 2011 (No. 10 C 7709, Dkt. No. 22) remain in effect at this time. The parties are encouraged to discuss settlement.

ENTER:

*James F. Holderman*
JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: September 27, 2011